UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHANNON B.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:20-cv-159 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Shannon B., on April 10, 2020. For the following reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

*Background*

The plaintiff, Shannon B., filed an application for Disability Insurance Benefits on March 21, 2014, alleging a disability onset date of March 21, 2014. (Tr. 248, 269). The claim was denied initially on April 28, 2016, and upon reconsideration on March 28, 2017. (Tr. 1, 18). Shannon B. then timely filed an appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) requesting that the district court review the unfavorable decision. (Tr. 1007). On February 21, 2018, the district court remanded the case back to the Social Security Administration due to the ALJ's failure to take into account evidence relating to Shannon B.'s Multiple Sclerosis diagnosis. As a result, the Agency's Appeals Council assigned the case to Administrative Law Judge, Genevieve Adamo. (Tr. 928, 1015-1036, 1039). The hearing was held on November 7,

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

2018. (Tr. 928). Vocational Expert (VE) Marie Barhydt appeared at the hearing. (Tr. 928). On February 27, 2019, the ALJ issued an unfavorable decision. (Tr. 903-918). Shannon B. then filed this petition for judicial review of the second unfavorable decision on April 10, 2020.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Shannon B. had not engaged in substantial gainful activity since March 21, 2014, the alleged onset date. (Tr. 905).

At step two, the ALJ determined that Shannon B. had the following severe impairments: multiple sclerosis; obesity; torn meniscus and anterior cruciate ligament (ACL) in bilateral knees with mild osteoarthritis; asthma; carpal tunnel syndrome; degenerative disc disease of the cervical, thoracic, and lumbar spine; protein S1 deficiency; optic neuritis; depression; and anxiety. (Tr. 905). The ALJ found that Shannon B.'s severe impairments significantly limited her ability to perform basic work activities. (Tr. 905). The ALJ also found that Shannon B. had nonsevere impairments: sleep apnea; hypertension; hyperlipidemia; cardiomegaly; fracture of the left humeral head; osteoarthritis of the first carpometacarpal (CMC) joint in the left hand; and pre-diabetes. (Tr. 905).

At step three, the ALJ concluded that Shannon B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 906). The ALJ considered whether the severity of Shannon B.'s mental impairments met or medically equaled the criteria of Listings 1.02, 1.04, 2.00 et seq., 11.09, 12.04, and 12.06. (Tr. 906). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting
> with others; concentrating, persisting, or maintaining pace; and
> adapting or managing themselves.

2

(Tr. 907-908). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 908). The ALJ found that Shannon B. had a mild limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a moderate limitation adapting or managing herself. (Tr. 908). Because Shannon B.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 909).

At step three, the ALJ concluded that Shannon B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 906).

After consideration of the entire record, the ALJ then assessed Shannon B.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequent bilateral upper extremity overhead reaching; frequent handling and fingering; no exposure to unprotected heights, dangerous moving machinery, and slick or slippery surfaces; avoid concentrated exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases, and poor ventilation; can perform simple, routine, and repetitive tasks with no production rate pace like assembly line work with only occasional simple work-related decision-making; can maintain attention and concentration for two-hour segments; could respond appropriately to occasional changes in the workplace; could have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training; could have frequent interactions with coworkers and occasional interactions with the general public; occasional pushing and pulling with bilateral upper extremities;

>limited to jobs that do not require peripheral vision; and needs a cane for ambulation.

(Tr. 909). The ALJ explained that in considering Shannon B.'s symptoms she followed a two-step process. (Tr. 910). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Shannon B.'s pain or other symptoms. (Tr. 910). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Shannon B.'s functioning. (Tr. 910).

After considering the evidence, the ALJ found that Shannon B.'s medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 910). However, the ALJ concluded that Shannon B.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 910).

At step four, the ALJ determined that Shannon B. had been unable to perform any past relevant work. (Tr. 917). Considering Shannon B.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could perform including addresser (19,000 jobs nationally), document preparer (47,000 jobs nationally), and table worker (23,000 jobs nationally). (Tr. 917-918). The ALJ found that Shannon B. has not been under a disability within the meaning of the Social Security Act from March 21, 2014 through February 27, 2019, the date of the unfavorable decision. (Tr. 918).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are

4

supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence").  Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion."  **Zoch v. Saul**, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); **Biestek v. Berryhill**, 139 S. Ct. 1148, 1154 (2019); **Bates**, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law.  **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R. § 404.1520**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity."  **20 C.F.R. § 404.1520(b)**.  If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. § 404.1520(c)**; *see*

5

*Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Shannon B. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In her appeal, Shannon B. broadly argues that the ALJ's decision is defective because it is based on findings of fact unsupported by substantial evidence. More specifically, Shannon B. argues that: (1) the ALJ erred in evaluating her symptoms and limitations; (2) the ALJ erred in evaluating the opinion evidence; (3) the vocational findings were founded on legal error and were not supported by substantial evidence; and (4) that the record overwhelmingly demonstrated that she was disabled under the Social Security Act and is entitled to an immediate award of benefits.

In arguing that the vocational findings were founded on legal error and were not supported by substantial evidence, Shannon B. claims that the ALJ failed to adequately account for her limited ability to remain seated without alternating positions or stand without a cane on an ongoing basis. Shannon B. argues that the ALJ offered no explanation for failing to include a sit/stand limitation in the RFC when one was included in the previous ALJ's findings.

When ALJ Daniel Balutis issued his May 3, 2016 unfavorable decision, he included the limitation that Shannon B. "need[ed] to alternate to standing for 5 minutes after every 30 minutes of sitting … need[ed] to alternate to sitting for 5 minutes after every 30 minutes of standing … [and] [s]he need[ed] to alternate to sitting for 5 minutes after every 30 minutes of walking." (Tr. 26). The ALJ did not provide reasoning as to how he reached such specific limitations, though he discussed in depth Shannon B.'s degenerative disc disease, multiple EMGs that showed "chronic denervating-type L5, S1 region radiculopathy", and her degenerative bilateral osteoarthritis in her knees which caused "near bone-to-bone contact." (Tr. 26-46, 434-37, 621, 722-30, 733-68, 772-75, 832-33, 888-89). Additionally, the ALJ did give partial weight to the opinion of Dr. H. M. Bacchus, who indicated that Shannon B. had "limitations with regard to general mobility, range of motions, strength, and stamina." (Tr. 45). Additionally, Dr. Bacchus noted that Shannon B. claimed that "she c[ould] sit 10 minutes, stand 2 minutes, walk 1 minute, and lift no weight." (Tr. 45, 609-11).

In the most recent unfavorable decision, ALJ Adamo's sole reason for not including a sit/stand limitation in the RFC was because Shannon B. "demonstrated the ability to sit constantly during her May 2016 functional capacity evaluation." (Tr. 913). The Commissioner argues that the ALJ "was not required to include [Shannon B.'s] unsupported limitations in the RFC or hypothetical, and [her] argument should be rejected."

While the court agrees that the ALJ is not required to include unsupported limitations in

7

the RFC and that ALJ Adamo was not bound by the decision nor the RFC created by ALJ Balutis, the court finds that ALJ Adamo erred by not including a sit/stand limitation for two reasons. **Surprise v. Saul**, 968 F.3d 658, 663 (7th Cir. 2020).  First, the ALJ's explanation for not including a sit/stand limitation was not sound. While an ALJ is not required to specifically address every piece of evidence, she must "provide a 'logical bridge' between the evidence and [their] conclusions." **O'Connor-Spinner v. Astrue**, 627 F.3d 614, 618 (7th Cir. 2010) *quoting* **Getch v. Astrue**, 539 F.3d 473, 480 (7th Cir. 2008). The ALJ based her decision to not include a sit/stand limitation in the RFC on the fact that Shannon B. sat through her May 2016 functional capacity evaluation. (Tr. 913). However, the ALJ conveniently failed to mention that Shannon B. had to stand during periods of the November 7, 2018 hearing. (Tr. 951).  The transcript reflects that Shannon B. stated "I'm sorry, I got to stand" to which her attorney responded, "[i]t doesn't matter … as long as you stay close to the microphone …" (Tr. 951).  The ALJ then proceeded to question Shannon B. as she stood. (Tr. 951).

Next, there is testimony and medical evidence that could support a sit/stand limitation that the ALJ failed to reconcile when coming to her conclusion that one was not necessary. For example, the ALJ stated that "the evidence suggest[ed] that [Shannon B.'s] weight d[id] impact her ability to ambulate and perform postural activities." (Tr. 913). Additionally, Shannon B. testified that she needed to frequently change positions and reported to Dr. Bacchus that she was able to sit for only 10 minutes, to which the ALJ acknowledged. (Tr. 913).  The ALJ failed to "provide a logical bridge" by discussing this evidence.

Shannon B. also claims that the ALJ erred by finding that "there [wa]s no objective evidence to support [her] need[] to elevate her legs when seated." (Tr. 914).  The court agrees that the ALJ's reasoning is flawed. Specifically, the court takes issue with the fact that the ALJ did not reference any of the medical records created by Dr. Tammie Stinson and Dr. Adam Hall.

8

An ALJ must "articulate at some minimal level her analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings." ***Suetkamp v. Saul***, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019); ***Nygara v. Saul***, 2021 WL 1178720 *8 (N.D. Ind. Mar. 5, 2021) (*quoting* ***Briscoe ex rel. Taylor v. Barnhart***, 425 F.3d 345, 352 (7th Cir. 2005) (finding that an ALJ's omission of any reasoning "in itself is sufficient to warrant reversal of the ALJ's decision")). Both Dr. Stinson and Dr. Hall recommended, during several different visits over the course of at least three years, that Shannon B. elevate her legs for pain and swelling. (Tr. 1328, 1330, 1337). Additionally, both doctors routinely prescribed Shannon B. compression socks to help with leg swelling. (Tr. 823, 1223, 1273); *see* ***Rouse v. Commissioner of Social Security***, 2018 WL 480829 *6 (N.D. Ind. Jan. 19, 2018) (finding that the ALJ erred when he rejected the plaintiff's allegation that she needed to elevate her legs without citing any evidence to support the exclusion).

In ***Rouse***, the ALJ asked the vocational expert whether it would be possible for the plaintiff to continue doing her previous work if the RFC included a limitation for leg elevation. ***Rouse,*** 2018 WL 480829, at *6. The vocational expert testified that it "would not be possible, 'nor any other jobs in the national economy without accommodation.'" 2018 WL 480829, at *6. The court found that the ALJ's failure to engage in a discussion regarding the plaintiff's claim that she needed to elevate her legs, as well as noting the vocational expert's testimony, necessitated remand. 2018 WL 480829, at *6.

The facts of ***Rouse*** are strikingly similar to this case. The ALJ did not engage in any discussion other than her incorrect statement that no objective evidence supported Shannon B.'s need to elevate her legs. Additionally, VE Marie Barhydt testified that having to elevate her legs above a certain height would preclude Shannon B. from all work. (Tr. 955). This coupled with the ALJ's failure to build a logical bridge between not adding a sit/stand limitation and the

evidence in the record warrants remand.

Shannon B. makes other arguments regarding her subjective symptoms and the RFC. However, because the ALJ erred by failing to build a logical bridge between the evidence in the record and parts of the RFC, the court need not address the additional arguments at this time. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***Willis v. Caterpillar, Incorporated***, 199 F.3d 902, 904 (7th Cir. 1999); ***Johnson v. Zema Systems Corporation***, 170 F.3d 734, 739 (7th Cir. 1999); ***Hunger v. Leininger***, 15 F.3d 664, 668 (7th Cir. 1994); ***The Provident Bank v. Manor Steel Corporation***, 882 F.2d 258, 260-61 (7th Cir. 1989); ***United States v. Johnson***, 859 F.2d 1289, 1294 (7th Cir. 1988); ***Lebovitz v. Miller***, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 20th day of July, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge